# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TOUSSAINT ANTHONY,

    Petitioner,

  v.                                          Case No. 17-CV-231

MICHAEL MEISNER,

    Respondent.

## DECISION AND ORDER DENYING PETITION FOR
## WRIT OF HABEAS CORPUS

Toussaint Anthony, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Anthony was convicted of two counts of second degree sexual assault of a child and two counts of soliciting a child for prostitution. He was sentenced to twenty years, consisting of fifteen years of initial confinement followed by five years of extended supervision. (Habeas Pet. at 2, Docket # 1.) Anthony alleges that his conviction and sentence are unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

Anthony challenges his judgment of conviction for two counts of second degree sexual assault of a child and two counts of soliciting a child for prostitution in Milwaukee County Circuit Court. (Answer to Habeas Petition ("Answer"), Ex. 1, Docket #10-1 at 1–2.) Anthony's conviction stems from incidents involving two fifteen-year-old girls, J.W. and Z.Y. (Answer, Ex. 5, *State v. Anthony*, Appeal No. 2014AP2708 (Wis. Ct. App. Feb. 16, 2016), Docket # 10-5 at 2.) At trial, J.W. testified that she received a text message from a stranger

and began exchanging messages with the individual, later identified as Anthony. (*Id.*) The two eventually met in person when Anthony picked her up from her mother's house and drove her to her grandmother's house. (*Id.*) J.W. testified that during the drive, Anthony talked about giving J.W. money for oral sex. (*Id.*) J.W. and Anthony next met at Anthony's house where J.W. performed oral sex on Anthony in exchange for $40.00. (*Id.*) Anthony told J.W. that he would pay her money if she brought a friend for him to have oral sex with, and J.W. brought her cousin, Z.Y., to Anthony's house and both girls performed oral sex on Anthony in exchange for money. (*Id.*) Z.Y. testified that she accompanied J.W. to Anthony's house and performed oral sex on Anthony in exchange for money. (*Id.*)

Anthony was convicted of all four charges. At sentencing, the State recommended a sentence of fifteen years initial confinement and five years extended supervision. During pretrial negotiations, the State had offered to recommend a total of six years of initial confinement, followed by three years of extended supervision if Anthony pled guilty to the sexual assault charges, with the remaining two charges to be dismissed and read in. (*Id.*) Anthony declined the offer, and also declined a subsequent offer by the State with the same terms, except that the State would recommend a total of five years of initial confinement. (*Id.*)

Out of a maximum possible 130-year sentence, the trial court sentenced Anthony to concurrent sentences resulting in a twenty-year term, comprised of fifteen years of initial confinement and five years of extended supervision. (*Id.* at 3.) Anthony filed a postconviction motion for resentencing or sentence modification, which was denied. (*Id.*)

Anthony appealed, arguing that the sentencing court impermissibly punished him for exercising his constitutional right to a jury trial. (*Id.*) The court of appeals rejected Anthony's argument and affirmed his judgment of conviction. (*Id.* at 5.) The Wisconsin Supreme Court

denied Anthony's petition for review on June 15, 2016. (Answer, Ex. 8, Docket # 10-8.) Anthony filed a timely petition for writ of habeas corpus on February 11, 2017. (Docket # 1 at 13.)

## STANDARD OF REVIEW

Anthony's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

3

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

**ANALYSIS**

Anthony raises one ground for relief in his habeas corpus petition—that his due process rights and Fifth Amendment right against self-incrimination were violated because the sentencing court impermissibly punished him for exercising his right to a jury trial. (Docket # 1 at 6.) The Sixth Amendment gives the accused in criminal prosecutions the right to a trial by jury. The Supreme Court has found that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort . . . and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'" *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) (internal citations omitted). *See also United States v. Rauhoff*, 525 F.2d 1170, 1178–79 (7th Cir. 1975) (internal citations omitted) ("As a general rule, so long as a

sentence is within the statutory maximum, the court will not exercise its supervisory powers to inquire into the propriety of a sentence . . . [o]ne exception to this rule exists where a trial judge has attempted to punish a defendant for the exercise of sixth amendment right to a trial by jury.").

Wisconsin law, as articulated by the Wisconsin Court of Appeals in this case, is consistent with the Supreme Court law. The court of appeals cited *Kubart v. State*, 70 Wis. 2d 94, 97, 233 N.W.2d 404 (1975) which states that a "defendant cannot receive a harsher sentence solely because he has availed himself of the important constitutional right of trial by jury." (Docket # 10-5 at 3.) Thus, Anthony has not shown that the court of appeals incorrectly identified the controlling legal standards; thus, the question before me is whether the court of appeals reasonably applied those principles to the facts of Anthony's case or unreasonably determined the facts in light of the evidence presented. *See Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004).

During Anthony's sentencing hearing, Anthony offered, in part, the following allocution:

> I do have a lengthy record. I have had run-ins with the law. I'm not going to dispute that. I have made poor choices. I made a poor judgment when I went to trial and put these kids on the stand, which I shouldn't have done. I wasn't thinking rationally and I made a very, very big mistake. I can't take back nothing that happened. All I can do now is work on my future and I just hope that you find some way to have leniency on me, Your Honor.

(Answer, Ex. 12, Transcript of Oct. 1, 2012 Sentencing Hearing, Docket # 10-12 at 14.) The trial court then went on to pronounce its sentence. The court began by explaining that it must take into consideration the nature of the offense, Anthony's character, the need to protect the community, and the rights of the victims. (*Id.* at 14–15.) The court stated that it was

considering the fact that Anthony had a past record, including a battery conviction, and was on federal supervision at the time he committed these offenses. (*Id.* at 15.) The court took into consideration the fact the victims were fifteen years old and Anthony not only solicited the children, but committed sexual assault. (*Id.*) The court then made the following statement, which forms the basis of Anthony's constitutional challenge in this case:

> The presentence report certainly describes the offense. We have all heard the testimony. What those young ladies who took the stand had to go through in order to testify and be victimized a number of times; not only in your presence, sir, but then because of the ramifications it has to what they have to live with and those emotional scars that will be there for their entire life-time.

(*Id.* at 16.) The court then continued by reiterating the seriousness of the offense, Anthony's past record, and the fact Anthony was on federal probation at the time he committed the crimes. (*Id.* at 16–17.) The court stated it was taking into consideration Anthony's academic and vocational skills, employment, the COMPAS Report which states that Anthony's violent recidivism risk scale is high, and his history of non-compliance (as seen by the fact he committed the present crimes while on probation). (*Id.* at 17.) The court stated that because Anthony had had numerous instances to show rehabilitation, but had failed to do so, it "would depreciate the seriousness of these offenses if the court didn't impose a sentence in the Wisconsin State Prison system." (*Id.*) The court concluded by sentencing Anthony to twenty years, consisting of fifteen years of initial confinement followed by five years of extended supervision, "because of the factors that I discussed; punishment aspect, a deterrent aspect mainly." (*Id.* at 17–18.)

Again, Anthony argues that the sentencing court punished him for going to trial and making the victims take the stand, and points to the judge's statement cited above in support of his argument. The court of appeals rejected Anthony's argument, finding that the single

reference to J.W. and Z.Y. having to testify, "contained within the more far-ranging comments," did not establish that Anthony was punished for exercising his constitutional right to a jury trial. (Docket # 10-5 at 3–4.) The court of appeals found that the court's reference to the victims testifying was in direct response to Anthony's allocution when he stated that he made a poor judgment by putting the kids on the stand. (*Id.* at 4.) It further found that the "stand-alone" comment was a small part of a larger observation regarding how Anthony victimized the girls. The court of appeals found that the court considered proper sentencing factors "including the seriousness of the offenses, Anthony's character, and the need to protect the community." (*Id.*)

The court of appeals further reasoned because the court's challenged comment was sandwiched between statements regarding proper sentencing factors, such as the seriousness of the offense, Anthony's character, and the need to protect the community, the court's reference to the victims testifying "was merely part of the court's assessment of the crime's severity." (*Id.*) The court of appeals concluded that "given all of the factors considered by the court when fashioning the sentence imposed, we are confident that Anthony was not punished for exercising his right to a jury trial." (*Id.* at 4–5.)

Anthony has not shown that the court of appeals unreasonably applied the law to the facts of his case or unreasonably determined the facts in light of the evidence presented. Anthony argues that the sentencing court equated Anthony's exercise of his right to a jury trial with "victimizing the girls further, a number of times" and that he scarred them for life by asserting his rights. (Petitioner's Reply Br. at 3, Docket # 14.) Anthony argues that the court vastly increased his sentence for what "the court essentially found to be additional crimes . . . consist[ing] of requiring J.W. and Z.Y. to testify and be victimized a number of

7

times." (*Id.* at 4.) Anthony points specifically to the fact that the prosecutor initially offered to recommend Anthony be sentenced to not more than six years of initial confinement. (*Id.* at 5.)

Anthony has not shown, however, that the court "vastly increased his sentence" because he went to trial. As the court of appeals noted, the State's earlier offer of six years contemplated dismissing two of the charges Anthony was ultimately convicted of. (Docket # 10-5 at 3.) And as the court of appeals found, the sentencing court thoroughly supported its sentencing decision by articulating Anthony's past criminal history, the seriousness of the offenses (including the girls' ages), and the fact he was on federal probation at the time he committed the offenses. The sentencing court concluded by emphasizing that the sentence was mainly for "a deterrent aspect," because Anthony had "numerous instances in order for your rehabilitation," and continued to reoffend. (Docket # 10-12 at 17.)

The sentencing court did state that the girls' testimony was another form of victimization by Anthony. However, the court of appeals' conclusion that this single statement, contained within a thorough sentencing decision, did not show Anthony was punished for exercising his Sixth Amendment rights, was not unreasonable. Indeed, review of the sentencing transcript shows that the sentencing court's comments were in context of Anthony's own comments during his allocution. Moreover, the record does not support that the sentencing court dwelled on the fact that Anthony exercised his constitutional right to trial in arriving at a sentence. Anthony has not demonstrated that the court of appeals' finding contravenes federal law as articulated by the Supreme Court. For these reasons, Anthony is not entitled to habeas relief.

# CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

Jurists of reason would not find it debatable that Anthony is not entitled to habeas relief. Thus, I will deny Anthony a certificate of appealability. Of course, Anthony retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

# ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 12th day of December, 2018.

                                                BY THE COURT:

                                                *s/Nancy Joseph*
                                                NANCY JOSEPH
                                                United States Magistrate Judge